UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**RONDA KLASSEN,**

    **Plaintiff,**

**v.**                                                                                     Case No: 8:21-cv-761-MSS-MRM

**ADVANCED MARKETING &
PROCESSING, INC. d/b/a Protect
My Car,**

    **Defendant.**

_____

**ORDER**

    **THIS CAUSE** comes before the Court for consideration of Defendant Advanced Marketing & Processing, Inc.'s Motion for Summary Judgment, (Dkt. 52), Plaintiff's Response in Opposition thereto, (Dkt. 70), and Defendant Advanced Marketing & Processing, Inc.'s Reply in Further Support of Its Motion for Summary Judgment. (Dkt. 74) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS IN PART and DENIES IN PART** Defendant Advanced Marketing & Processing, Inc.'s Motion for Summary Judgment.[1]

    **I.**     **BACKGROUND**

        **A.**     **Factual Background**

---

[1] In light of the Court's Order, which does not rely on the Perkins' declaration, Plaintiff's Motion to Strike the Declaration of Michael Perkins (Dkt. 61) is DENIED as MOOT.

Plaintiff, a resident of Tampa, Florida, owned and used a cell phone, the number for which was (352) 998-7970 from February 2020 through April of 2020. (Dkt. 63 at ¶¶ 1–2) ("Stipulated Facts") Plaintiff registered her phone number, ending in -7970, on the National Do Not Call Registry on or around May 24, 2007. (Id. at ¶ 3) Defendant Protect My Car, a seller of vehicle service contracts, generates sales through telemarking and purchases sale leads from third-party "lead generators" or "data brokers[.]" (Id. at ¶¶ 5–7) On March 2, 2020, Defendant purchased and received a "lead" including Plaintiff's name and phone number (the "Lead") from consumer data-broker Digital Media Solutions ("DMS") for $1.25. (Id. at ¶ 8) DMS purportedly purchased the Lead with Plaintiff's data from Next Level Media. (Id.) The website Instant-Auto-Insurance-now.com (the "Website") seems to have generated the lead. (Id. at ¶ 9) The Website utilized a service provided by a third-party company called Jornaya Guardian ("Jornaya"). (Id. at ¶ 10) Jornaya authored a report reflecting that a user of an internet-connected device with IP address 72.216.33.183 on February 28, 2022 at 5:30 pm EST submitted an "opt-in" form (the "Opt-in") on the Website. (Id.)

The Website's form has the following prompts: "Select your vehicle(s)" and "[t]ell us about you or the driver looking to be insured[.]" (Id. at ¶ 14) This form has fields for the visitor to enter information such as name, address, date of birth, phone number, address, email address, gender, vehicle, relationship status, education, occupation, credit rating, and daily commute miles. (Id.) A "submit" button is under these fields with the following language appearing above:

> BY CLICKING "SUBMIT", I REPRESENT THAT I AM 18+ YEARS OF AGE AND AGREE TO THE PRIVACY POLICY AND TERMS & CONDITIONS. BY CLICKING THE "SUBMIT" BUTTON, ***I HEREBY GIVE PRIOR EXPRESS WRITTEN CONSENT TO RECEIVE MARKETING COMMUNICATIONS*** REGARDING INSURANCE PRODUCTS AND SERVICES VIA AUTOMATIC TEELPHONE DIALING SYSTEM AND/OR PRE-RECORDED CALLS AND/OR SMS/MMS ***FROM INSTANT-AUTO-INSURANCE-NOW.COM AND ONE OR MORE OF ITS MARKETING PARTNERS*** AT THE PHONE NUMBER AND/OR EMAIL ADDRESS PROVIDED TO US, INCLUDING WIRELESS NUMBERS, IF APPLICABLE, ***EVEN IF I HAVE PREVIOUSLY REGISTERED THE PROVIDED NUMBER ON THE DO NOT CALL REGISTRY***. SMS/MMS AND DATA MESSAGING RATES MAY APPLY. THIS CONSENT IS NOT REQUIRED AS A CONDITION TO PURCHASE SERVICES OR PRODUCTS, AND I MAY REVOKE MY CONSENT AT ANY TIME.

(Id.) (emphasis added) The Visual Playback accessible from the Jornaya Report shows that Plaintiff's accurate name, address, telephone number, e-mail address, and vehicular information were submitted on the Website during the purported February 28, 2020 opt-in by a user of an internet-connected device with IP address 72.216.33.183. (Id. at ¶ 15) Plaintiff subpoenaed Cox Communications ("Cox") for the identity of its subscriber with the IP address ending in -33183, and Cox identified the name, address, and phone number of the subscriber as an individual named Renard Johnson of Fort Walton Beach, FL 32547, and provided the address and phone numbers of that individual. (Id. at ¶¶ 16–17) The Jornaya Report describing the Opt-in from 72.216.33.183 shows that it was submitted to Next Level Media, whose website lists "ProtectMyCar" as one of its marketing partners. (Id. at ¶¶ 18–19) In March 2020, Protect My Car placed telephone solicitation calls to Plaintiff at the following dates and times:

- March 2, 2020 at 7:45 pm EST from (352) 486-7062;
- March 3, 2020 at 8:18 am EST from (352) 405-1012;
- March 3, 2020 at 5:45 pm EST from (352) 486-7062;
- March 4, 2020 at 8:36 am EST from (352) 405-1054;
- March 5, 2020 at 2:29 pm EST from (352) 486-7076; and
- March 6, 2020 at 10:12 am EST from (352) 486 7076

(the "six stipulated calls"). (Id. at ¶ 20) Plaintiff answered two of these calls. (Id. at ¶ 21) In the first call, Plaintiff responds, "this is not a good time. I'm at work[,]" and did not object when told "[w]e can give you a call back later[.]" (Id. at ¶ 22) On the second call, Plaintiff states that she is not interested, and the call shortly ends thereafter. (Id. at ¶ 23) The Parties dispute whether Defendant called Plaintiff on March 4 at 4:11 pm EST and April 3, 2020 at 3:26 pm EST (the "two disputed calls"). (Id. at ¶ 24) However, the Parties have stipulated that Plaintiff will not seek recovery for any other calls than the six stipulated calls and the two disputed calls. (Id.)

### B. Procedural History

Plaintiff filed the Original Complaint against Defendant Protect My Car Admin. Services, Inc., on March 30, 2021. (Dkt. 1) Plaintiff alleged Defendant Protect My Car Admin Services, Inc. placed solicitation calls in violation of two provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227(b)-(c). (Id.) Defendant now moves for summary judgment on several grounds. (Dkt. 52 at 4) Defendant contends that it placed the calls to Plaintiff in error and Protect My Car, as part of its routine business practice, complies with the standards mandated by the safe harbor provision. (Id.) Next, PMC claims that, to the extent there are any actionable

calls, Plaintiff has failed to create a genuine issue of fact in support of the alleged 100 calls. (Id. at 5)

In her Opposition, Plaintiff argues that PMC is not entitled to the safe harbor because PMC "has demonstrated its lack of adequate policies in place to assure it is only calling consenting parties." (Dkt. 70 at 18) Plaintiff asserts that PMC is not entitled to summary judgment as to the two disputed calls because Plaintiff has provided information and testimony as to the two calls, while PMC "has not produced any records to dispute" that they made these calls. (Id. at 19) In Defendant's Reply, PMC once again claims that Plaintiff fails to provide any evidence that PMC made the two disputed calls. (Dkt. 74 at 8) PMC asserts that "Plaintiff fails to point to any admissible evidence to create a dispute of fact as to [PMC's compliance with] any of [the safe harbor] defense's requirements, and judgment should be entered in PMC's favor. (Id.)

## II.  STANDARD OF REVIEW

The Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001) (explaining that "[s]ummary judgment is proper if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law"). For a factual dispute between the parties to defeat summary judgment, the factual dispute must be "both genuine and material." Miccosukee Tribe of Indians of Fla. v.

United States, 516 F.3d 1235, 1243 (11th Cir. 2008). A fact is material if it "affect[s] the outcome of the suit under the governing law," and is genuine "if a reasonable trier of fact could return judgment for the non-moving party." Id. A court will "construe the facts and draw all inferences in the light most favorable to the nonmoving party and when conflicts arise between the facts evidenced by the parties, [the court will] credit the non[-]moving party's version." Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006). The role of the jury is to weigh the evidence and determine credibility, "[t]herefore, if the determination of the case rests on which competing version of the facts or events is true, the case should be submitted to the trier of fact and the motion for summary judgment denied." Hodgetts v. City of Venice, Fla., 794 F. Supp. 2d 1265, 1271 (M.D. Fla. 2011) A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case. Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted). When a moving party has discharged its burden, the non-moving party must then designate specific facts (by its own affidavits, depositions, answers to interrogatories, or admissions on file) that demonstrate there is a genuine issue for trial. Porter v. Ray, 461 F.3d 1315, 1320-1321 (11th Cir. 2006) (citation omitted). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value."). "If a party fails to properly support an assertion of fact or fails to properly address another party's

assertion of fact . . . the court may grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

### III. DISCUSSION

#### A. Applicable Law

Congress enacted the TCPA in 1991 because "[m]any consumers [were] outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their homes." Cordoba v. DIRECTV, LLC, 942 F.3d 1259, 1264 (11th Cir. 2019) (internal citations omitted). The Federal Communications Commission ("FCC") "promogulated regulations creating a national do-not-call list and requiring telemarketers to maintain their own internal do-no-call lists." Id. The TCPA creates "a private right of action for anyone who receives more than one call within a year from the same entity in violation of these regulations, and plaintiffs can recover $500 in statutory damages for each violation." Id. (citing to § 227(c)(5)); see also Mais v. Gulf Coast Collection Bureau, Inc., 944 F. Supp. 2d 1226, 1241 (S.D. Fla. 2013), rev'd in part, 768 F.3d 1110 (11th Cir. 2014) (explaining that section 227(c)(5) "concerns violations of the 'Do Not Call' Registry"). To succeed on a claim under Section 227(c)(5) of the TCPA, the plaintiff must prove the receipt of more than one call within a year (1) "by or on behalf of the same entity" and (2) "in violation of an FCC regulation promulgated under Section 227(c)." Nece v. Quicken Loans, Inc., No. 8:16-CV-2605-T-23TBM, 2017 WL 2865047, at *1 (M.D. Fla. Jan. 3, 2017) (explaining the elements of a section 227(c) claim in the context of a motion to dismiss).

7

### B. Defendant's Motion for Summary Judgment

As explained below, Defendant's Motion for Summary Judgment is due to be **GRANTED IN LARGE PART** because there is no genuine issue of fact that disputes the TCPA's Safe Harbor's applicability to Defendant. Because the safe harbor applies, the Court need not determine whether Plaintiff used her cellular telephone as her residential number, determine whether Plaintiff provided consent to PMC, or determine any factual issues with the two disputed calls. Defendant's Motion for Summary Judgment as to the 100 calls not shown in PMC's records is due to be **DENIED as MOOT.**

> 1. <u>There is no genuine issue of material fact as to the calls not shown in PMC's records.</u>

The Court **DENIES as MOOT** PMC's request for summary judgment for the "uncorroborated calls by PMC of 'over 100 times.'" (Dkt. 52 at 17–18) The Parties have stipulated that Plaintiff "will not seek to recover any calls other than the six stipulated calls and the two disputed calls." (Dkt. 63 at ¶ 24) Therefore, the only calls at issue are the six stipulated calls and the two disputed calls.

> 2. <u>There is no genuine issue of material fact that disputes the Safe Harbor's applicability to Protect My Car, thus absolving Protect My Car of any liability for any violation of section 227(c)(5).</u>

Section 227(c)(5) provides that "[i]t shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone

8

solicitations in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). The pertinent regulations provide that a defendant is not liable for violating section 227(c)(5) if the defendant demonstrates that the "violation is the result of error" and "that as part of its routine business practice" defendant meets certain standards. 47 C.F.R. 64.1200(c)(2)(i); see also Benzion v. Vivint, Inc., No. 12-61826-CIV, 2014 WL 11531368, at *6 (S.D. Fla. Jan. 17, 2014) (explaining that the regulations create an affirmative defense against a section 227(c)(5) claim if a defendant "demonstrate[s] that the violation is a result of error and that the defendant meets certain standards"). These standards include:

> (a) the establishment and implementation of written procedures to comply with the national do-not-call rules;
>
> (b) the training of its personnel, and any entity assisting in its compliance, in procedures established pursuant to the national do-not-call rules;
>
> (c) maintenance and recording of a list of numbers that the seller may not contact;
>
> (d) the use of a process to prevent telephone solicitations to any telephone number on any list established pursuant to the do-not-call rules, employing a version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call is made, and maintenance of records documenting this process; and
>
> (e) the purchase of the national do-not-call database and the use of a process to ensure that it does not sell, rent, lease, purchase or use the national do-not-call database, or any part thereof, for any purpose except compliance with this section and any such state or federal law to prevent telephone solicitations to telephone numbers registered on the national databases; the purchase of access to the relevant do-not call data from the administrator of the national database and does not participate in any arrangement to share the cost of accessing the national database, including any arrangement with telemarketers who many not divide the costs to access the national database among various client sellers.

64.1200(c)(2)(i)(A)-(E).

The FCC has explained that the "crucial element" of the safe harbor is that the alleged violative call was "made in error." In Re Dynasty Mortg., L.L.C., 20 F.C.C. Rcd. 4921, 4929 (2005) (finding that Dynasty's, a mortgage services provider accused of making calls to numbers contained in the National Do-Not-Call Registry, safe harbor defense failed because Dynasty "provide[d] no information to satisfy a crucial element of the safe harbor: that the calls were made in error"). To support a claim of error, the proponent of the affirmative defenses needs "evidence showing that otherwise unlawful telephone solicitations were made unintentionally and detailing any procedural breakdowns that led to such calls, as well as the steps that the seller has taken to minimize future breakdowns." Id.[2] See, e.g., Simmons v. Charter Commc'ns, Inc., 222 F. Supp. 3d 121, 135 (D. Conn. 2016), aff'd, 686 F. App'x 48 (2d Cir. 2017); Johansen v. Efinancial LLC, No. 2:20-CV-01351-DGE, 2022 WL 168170, at *6 (W.D. Wash. Jan. 18, 2022).

PMC contends that it satisfies the error requirement of the safe harbor provision because the "undisputed evidence . . . shows, even if Plaintiff did not submit the

---

[2] The Eleventh Circuit has not applied In Re Dynasty Mortg., LLC, but other district courts have allowed defendants to show they made the offending calls in error by pointing to "procedural breakdowns that led to such [a] call[ ], as well as the steps that the [caller] has taken to minimize future errors." Mattson v. Quicken Loans, Inc., No. 3:18-CV-00989-YY, 2020 WL 6365506, at *3 (D. Or. Sept. 2, 2020); see also Simmons v. Charter Commc'ns, Inc., 222 F. Supp. 3d 121, 135 (D. Conn. 2016), aff'd, 686 F. App'x 48 (2d Cir. 2017) (explaining that "[a] party can support claim of error by showing that the telephone solicitation was made unintentionally" and that "[o]ne method of establishing that the call was made in error is to show the procedural breakdown that led to such calls, as well as the steps that the seller has taken to minimize future errors").

consent to be called by PMC, PMC did in fact receive her information and telephone number and made its calls under the mistaken belief as to her consent without any knowledge or indication that she did not make the submission." (Dkt. 52 at 25) Relying on the Michael Sabau (Dkt. 53), Evan King[3] (Dkt. 54), and Manny Wald[4] (Dkt. 57) declarations, PMC claims it made the stipulated calls in error because it "had acquired a verified and validated lead containing Plaintiff's personal information and telephone number with consent to be called by PMC." (Id. at 23) (citing to Sabau Decl. at ¶¶ 18-22 & Exs. C-D; King Decl. at ¶¶ 4-10 & Exs. 1-4; and Wald. Decl. & Ex. A) Sabau testified that PMC purchased leads "only from legitimate and vetted companies . . . that represent and warrant that the consumer was presented with a disclosure and gave prior express written consent consistent with the requirements of the TCPA to be called by or regarding Protect My Car." (Sabau Decl. at ¶ 5) PMC also provides evidence that the privacy policy on the site at the time of the Lead's submission included a listing of third-party marketing partners, such as PMC. (King Decl. at ¶ 10) (citing to Ex. 4) The TCPA disclosure statement references these "marketing partners" and explains that the visitor agrees to receive mobile marketing, despite any prior registration on a Do-Not-Call Registry. (King Decl. at ¶¶ 9–10)

---

[3] Evan King, Compliance Counsel for Digital Media Solutions, Inc. ("DMS") provided a Declaration in which he testified that DMS sold the Lead with Plaintiff's personal information to PMC on March 2, 2020. (Dkt. 54 at ¶ 4) ("King Decl.")

[4] Manny Wald is the Technical Co-Founder for Lead Intelligence, Inc. d/b/a Jornaya and he provided a declaration in which he testified that Jornaya offers clients, like PMC, with information about what data was entered on a website form during a particular visit on a specified time and date, as well as the website's content and actions the visitor took. (Dkt. 57 at ¶ 7) ("Wald Decl.")

In Response, Plaintiff does not proffer any evidence to counter PMC's factual evidence that the alleged calls were made in error. Instead, Plaintiff argues that the "opt-in that Protect My Car relies on is intentionally ambiguous as to whether the intended called party is the party submitting the form." (Dkt. 70 at 17) Plaintiff asserts that "in the recording transcribed [of one of the calls], Protect My Car's agent stated that the opt-in information could have come from a Walmart gift card." (Id.) According to Plaintiff, this shows the ambiguity in the consent language; however, these arguments do not create a factual dispute precluding summary judgment on grounds that PMC called Plaintiff under the mistaken belief that Plaintiff had provided consent. Plaintiff contends that PMC "was unable to direct its own attorneys to the location of the original lead generator for the opt-in related to this matter." (Dkt 70 at 17) Yet Plaintiff fails to put forth any affirmative evidence to create a factual dispute concerning PMC's mistaken belief that would preclude summary judgment. PMC has, however, provided factual evidence demonstrating that PMC called Plaintiff under the mistaken belief it had received consent. (See Sabau Decl. at ¶¶ 18-22 & Exs. C-D; King Decl. at ¶¶ 4-10 & Exs. 1-4; and Wald. Decl. & Ex. A) Therefore, the Court finds that PMC meets the error prong of the safe harbor. (See Dkt. 63 at ¶ 15) (Plaintiff and PMC stipulating that "[t]he Visual Playback accessible from the Jornaya Report reflects that [Plaintiff's] accurate name, address, telephone number, e-mail address, and vehicular information were submitted on the Website during the purported February 28, 2020 opt-in").

Because the Court finds that PMC has met the error prong of the safe harbor defense, the Court need not address whether PMC also met the standards set forth in C.F.R. § 64.1200(c)(2)(i)(A)-(E) to avoid liability. In short, the safe harbor provision applies, regardless of any question of fact existing as to whether Plaintiff requested or consented to being contacted. Plaintiff fails to create a dispute of fact as to the alleged violation being the result of an error. The Court hereby **GRANTS** summary judgment in favor of PMC.

## IV.   CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Defendant Advanced Marketing & Processing, Inc.'s Motion for Summary Judgment, (Dkt. 52), is **GRANTED IN LARGE PART** and **DENIED IN SMALL PART**.
2. The **Clerk** is **DIRECTED** to **CLOSE** the case and **TERMINATE** any pending motions.

**DONE** and **ORDERED** in Tampa, Florida, this 1st day of March, 2023.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

13

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person